# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 18, 2013 Session

## BRANDY LEA BIRDWELL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2008-A-88      Cheryl A. Blackburn, Judge**

---

**No. M2012-02062-CCA-R3-PC - Filed December 6, 2013**

---

The Petitioner, Brandy Lea Birdwell, contends that she received the ineffective assistance of counsel at trial, citing the following bases:  (1) failure to provide a copy of discovery; (2) failure to adequately prepare and advise the Petitioner prior to her testimony; (3) failure to request a jury out hearing before the State impeached the Petitioner with a pending criminal charge; (4) failure to conduct a proper investigation with a private detective; and (5) failure to subpoena a material witness at the Petitioner's request.  After reviewing the record and the applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Trudy Bloodworth, Nashville, Tennessee, for the appellant, Brandy Lea Birdwell.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle Consiglio-Young, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

The Petitioner was indicted by a Davidson County Grand Jury in January of 2008 for especially aggravated robbery and first degree felony murder in the perpetration of that robbery, both Class A felonies, for her involvement in a shooting at the Last Chance Liquor Store and Market on November 6, 2007.  After a jury trial, the Petitioner was convicted of the offenses as charged.  She was sentenced to life in prison for the first degree murder

conviction and twenty years for the especially aggravated robbery conviction. The trial court ordered the sentences to run concurrently.

On direct appeal, the Petitioner challenged the sufficiency of the evidence for both convictions. See State v. Brandy Lea Birdwell, No. M2009-00722-CCA-R3-CD, 2010 WL 3582489, at *1 (Tenn. Crim. App. Sept. 15, 2010). Concluding that the evidence was sufficient to sustain the jury's verdict, this court affirmed the Petitioner's convictions on September 15, 2010; our supreme court denied permission to appeal on February 17, 2011. Id.

The Petitioner filed a petition for post-conviction relief on October 27, 2011, citing the following bases for relief as relevant to this opinion:

> (1) counsel was ill-prepared to try the case, [including within that trial counsel failed to discover, interview or present witnesses in support of her defense;] (2) counsel failed to protect the [Petitioner's] Fifth Amendment rights[;] (3) counsel failed to provide meaningful objections to testimony[;] (4) counsel failed to request a jury-out hearing in reference to evidence submitted under Tennessee Rules of Evidence 608 and 609[;] and (5) counsel failed to provide the [Petitioner] with timely pre-trial discovery.

The evidentiary hearing was held on May 23, 2012, and July 11, 2012.[1] At the hearing, the Petitioner, her mother, Mary Birdwell, and trial counsel testified.

The Petitioner stated that trial counsel never visited her in jail and that representatives from his office came to see her two or three times, only two of which involved discussions about her case; these meetings were very brief. The Petitioner said that she did not receive discovery until after she was convicted. Specifically, the Petitioner complained of her lack of knowledge about the DVD of the Bi-Rite video, being unable to view her video statement to police officers, and being unable to review the diagram of the store, explaining that she was asked questions at trial that she could not recall from memory given the amount of time that had passed since the incident. Throughout her testimony, the Petitioner insisted that if she had been given the discovery materials, she would have been better prepared for trial and would have appeared more credible. Regarding her interview with police, the Petitioner stated that there were discrepancies in her testimony because she denied knowing the co-defendants during her interview. The Petitioner said that she did not recall discussing the ranges of punishment with trial counsel. The Petitioner also said that she would have taken

_____

[1] No testimony was heard on the latter date.

the twenty-five-year offer if she had seen the discovery materials.[2]

The Petitioner stated that it was a joint decision, between her and trial counsel, to go to trial. She testified that she did not want to take the thirty-year offer made by the State. The Petitioner also testified that she asked trial counsel to subpoena Ms. Mayfield, who was also present during the robbery, because Ms. Mayfield would have testified that the Petitioner did not know that her co-defendants planned to rob the victim. However, she did not give trial counsel Ms. Mayfield's information. The Petitioner also testified that trial counsel failed to do the following: present evidence that the Petitioner was drinking on the day of the incident; prepare the Petitioner for her testimony; and discuss grounds for appeal.

The Petitioner admitted that she heard portions of her police interview during her testimony, but she insisted that it would have helped her memory to have viewed the interview beforehand. She also admitted that she had the opportunity to explain many of the discrepancies from the police interview video during her testimony, namely that she lied during the interview because she feared retribution from her co-defendants. Finally, the Petitioner admitted that though she would have been less surprised if she had seen the discovery materials beforehand, her testimony would still have been the same, just more polished.

Ms. Birdwell, the Petitioner's mother, testified that the Petitioner relayed to her that trial counsel had not been communicating with the Petitioner and that the Petitioner did not know "what was going on." Ms. Birdwell explained that the State called her as a witness at the Petitioner's trial and that she did not recall ever speaking to trial counsel prior to her testimony. She also explained that she felt "that things were hurried, and there wasn't a lot of preparation done."

Trial counsel testified that he had been practicing law for sixteen years and that ninety-five percent or more of his practice was criminal defense. He also testified that he had represented defendants in approximately twenty-five murder cases and that approximately twelve to thirteen of those cases proceeded to trial. Trial counsel explained that there were no "unknowns" in this case and that their likelihood of success at trial depended on whether the jury believed the Petitioner's version of events, namely that she was unaware that her co-defendants intended to rob the victim. Trial counsel explained that he felt "pretty confident" in their success at trial if the jury found the Petitioner to be credible.

Trial counsel testified that both he and the Petitioner made the decision to go to trial.

---

[2] The Petitioner testified that this offer had been rescinded and had increased when she did attempt to accept this offer.

He discussed with her the option of going to trial versus taking the offer made by the State, thirty years at eighty-five to one hundred percent. Trial counsel relayed that he told the Petitioner that it was her decision and that they ultimately agreed that they should take the case to trial. Trial counsel testified that he told the Petitioner that he "thought that she needed to tell her story because [he] believed her story." Trial counsel stated that during a break at trial, he and the Petitioner discussed the "pros and cons of testifying." He explained that he believed the Petitioner would make a good witness because she could fill in the pieces of the story but that the decision to testify was left to the Petitioner.

Trial counsel admitted that he did not allow the Petitioner to review her actual statement to the police and that neither of them viewed the Bi-Rite video that was included in his discovery material, which he opined was "crucial" because it affected her credibility in the eyes of the jury. Regarding the video of the Petitioner's police interview, trial counsel stated that the video was four hours long. It was redacted at trial; because the redaction was fair, he did not believe it was damaging to the Petitioner's credibility. Regarding the Bi-Rite video, trial counsel explained that the DVD player would not work in any of his computers, so he could not view the video; he did not ask the State for another copy of the DVD. Trial counsel admitted that viewing that Bi-Rite video and preparing the Petitioner for that video and researching impeachment more thoroughly are the only things he would have done differently. Trial counsel explained that it was his policy in cases with significant ramifications not to give incarcerated client's copies of the discovery materials. Instead, he would summarize the information and share the key points with his clients. Trial counsel further explained,

> . . . I learned the hard way twice that that can muddy the waters with other people hearing things or -- you know, you have what we call jailhouse lawyers that say, oh, let's talk about this case, they can't get you for this, let me look at your discovery. And they're talking about the case, and then your client inevitably says something that they think might help them get out of jail. So then the next thing you know there's a call to the D.A.'s office, and they're a surprise witness at trial.

However, trial counsel testified that if the client is insistent, he will give the discovery materials to them.

Trial counsel stated that he did not interview any of the State's witnesses nor any of the co-defendants' mutual friends nor any of the neighbors at the home where the co-defendants allegedly formed the plan to rob the victim. He explained that he spoke with the detective on the case when he saw the detective in court. Trial counsel testified that the Petitioner did not ask him to subpoena any witnesses but that they discussed Ms. Mayfield,

who was the only person present during the incident who was not charged. He further testified that he did not subpoena Ms. Mayfield because he believed that the State would call her as a witness and that he was surprised when she was not called at trial. Trial counsel also testified that he was not sure that Ms. Mayfield's testimony would have been favorable.

After taking the matter under advisement, the post-conviction court issued an order denying relief on September 11, 2012.[3]

ANALYSIS

The Petitioner contends that she received ineffective assistance of counsel at trial, citing the following bases: (1) failure to provide the Petitioner with a copy of discovery; (2) failure to adequately prepare and advise the Petitioner prior to her testimony; (3) failure to request a jury-out hearing before the State impeached the Petitioner with a pending criminal charge; (4) failure to conduct a proper investigation with a private detective; and (5) failure to subpoena a material witness at the Petitioner's request. The State responds that allegation (4) has been waived because the Petitioner did not raise that issue in her petition for post-conviction relief and, further, that the Petitioner is not entitled to relief on the remaining allegations because the Petitioner failed to prove that trial counsel was deficient or that she was prejudiced by any action or inaction of trial counsel.

Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that her conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove her factual allegations supporting the grounds for relief contained in her petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v.

---

[3] The post-conviction court continued the case until July 11, 2012, to give the Petitioner another opportunity to secure the witness, Ms. Mayfield. Apparently, a subpoena was issued for her testimony, but Ms. Mayfield did not show up at trial. The post-conviction court declined to issue a material witness bond for Ms. Mayfield because the Petitioner could not prove that her testimony would have been favorable.

State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

## *I. Waiver of Basis (4)*

As a preliminary matter, we will address the State's waiver argument regarding the Petitioner's contention that trial counsel failed to conduct a proper investigation with a private detective. The State argues that the Petitioner has waived review of this issue on appeal because the Petitioner did not cite this issue as a basis for relief in her post-conviction petition, thus, the post-conviction court did not address the issue in its order denying post-conviction relief. We agree with the State.

Tennessee Code Annotated section 40-30-110(c) is instructive on this issue; it provides that "[p]roof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition." Further, section 40-30-106 states, in relevant part, that

> (d) The petition must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. . . .
>
> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]

Tenn. Code Ann. § 40-30-106(d), (g). There is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived. Id. at 40-30-110(f). However, given that this issue was not addressed in the order denying post-conviction relief and that the Petitioner cites no authority or any meaningful argument in this section of her brief on appeal, we cannot conclude that she has presented sufficient evidence to overcome the presumption of waiver. See, e.g., Tenn. R. App. P. 36(a) ("relief may not be granted in contravention of the province of the trier of fact").

## II. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a defendant raising a claim of ineffectiveness to show that counsel's representation was deficient, thus fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697. The Strickland standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Turning to the first allegation that the Petitioner cited as a basis for relief, trial counsel's failure to provide the Petitioner with a copy of discovery, we conclude that she has failed to show that the result of the proceedings would have been different if she had received discovery. Trial counsel admitted that he did not provide the Petitioner with copies of the discovery materials; instead, he summarized those materials, took notes of key points, and shared that information with the Petitioner. Trial counsel explained that it was his policy in cases with significant ramifications not to give incarcerated defendant's copies of the discovery materials because he did not want any "jailhouse lawyers" showing up at trial as surprise witnesses as he had experienced in the past. As such, we conclude that the Petitioner is not entitled to relief on this issue because, as she admitted at the post-conviction hearing, her testimony would have been the same even if she had been able to view the discovery materials prior to trial. When pressed as to how trial counsel's failure to provide these materials prejudiced her, the Petitioner only stated that she would have been better prepared for trial. This is not sufficient evidence to show that the Petitioner may not have been found guilty by the jury if trial counsel had provided discovery materials.

We now turn to the allegation that trial counsel failed to adequately prepare and advise the Petitioner prior to her testimony. Trial counsel admitted that he did not allow the Petitioner to review her actual statement to the police nor did he allow her to view the Bi-Rite video that was included in his discovery material, which he opined was "crucial" because it affected her credibility in the eyes of the jury. He also admitted that did not inform the Petitioner of the State's notice of impeachment regarding a pending theft case and that, if he could do anything differently, he would have conducted research on that impeachment issue. The post-conviction court found that there was no evidence in the record to support a finding that trial counsel was not adequately prepared for trial. However, our review of the record suggests that trial counsel's failure to view the Bi-Rite video and police statement with the Petitioner in preparation for her testimony, given his opinion that her credibility was the "linchpin" of the case, was deficient performance. Further, we also conclude that trial counsel's failure to research and prepare the Petitioner for possible impeachment based on the pending criminal case fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 690.

Nevertheless, the Petitioner is still not entitled to relief on this issue because she has failed to show how the result would have been different if she had viewed the video. See id. at 694. The Petitioner did not present any evidence that she would not have testified if she had been informed that evidence of this pending conviction would have been admissible nor did she offer any evidence of prejudice other than stating she would have been "less surprised" and "better prepared." In fact, when asked how the outcome would have been different if trial counsel had done some of these things, the Petitioner stated, "I would have made a better witness. . . . I would have been able to present my testimony better and not

been, I guess, blindsided by some of the stuff that was used." Given the strength of the State's case, we conclude that the Petitioner failed to prove that trial counsel's deficiencies prejudiced her.

The Petitioner also alleged that trial counsel was deficient for "fail[ing] to request a jury[-]out hearing pursuant to Rule 608 of the Tennessee Rules of Evidence before the State impeached [her] with a pending theft case at trial." The post-conviction court and the State both conclude that because a jury-out hearing was, in fact, held, the Petitioner's allegation is without merit. We agree. Our review of the trial record reveals that a bench conference was conducted immediately after the Petitioner was asked about her guilt in a pending theft case on cross-examination. Given that the hearing was conducted, we conclude that this issue is moot and does not provide the Petitioner with a basis for relief.

Finally, turning to the Petitioner's allegation regarding trial counsel's failure to subpoena a material witness at the Petitioner's request, we conclude that the Petitioner has failed to show prejudice. To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a petitioner should present that witness at the post-conviction hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id.

The record reflects that the witness in question, Ms. Mayfield, was one of four people in the vehicle when the offenses occurred; however, she was not charged. The Petitioner testified that Ms. Mayfield would have corroborated her story that she was unaware that her co-defendants were going to commit a robbery when she drove them to the store that day. Although the Petitioner made some effort to secure the witness's testimony at the evidentiary hearing, and the post-conviction court granted a continuance to aid her in that endeavor, the witness did not show up. The Petitioner requested that the post-conviction court issue a material witness bond to compel Ms. Mayfield to testify; however, post-conviction counsel admitted that she had not "been as aggressive as [she] should" have been in securing the witness's presence and that she had not interviewed the witness to determine whether the witness's testimony would have, in fact, been favorable to the Petitioner.[4] We conclude that the Petitioner has failed to establish that trial counsel's failure to secure Ms. Mayfield's testimony at trial resulted in prejudice to the Petitioner. Therefore, the Petitioner is not entitled to relief on this issue.

---

[4] On appeal, the Petitioner does not challenge the post-conviction court's refusal to issue a material witness bond. Therefore, any challenge to the post-conviction court's refusal to do so has been waived.

## CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE